### STATE v. SIMMONS et al.
### No. 5839.

Court of Appeal of Louisiana. Second Circuit.

Aug. 12, 1938.

Coleman & Morgan, of Shreveport, for the State.

Jackson & Mayer, of Shreveport, for appellees.

HAMITER, Judge.

A Chevrolet truck, owned by the Evansville Oil Corporation and containing approximately 757 gallons of gasoline, was seized and impounded on the morning of July 10, 1937, by an assistant collector of revenue of the State of Louisiana. Thereafter the named governmental entity instituted this in rem proceeding seeking the forfeiture and sale of the seized vehicle. The violation of various provisions of Act 87 of 1936, being the Louisiana gasoline taxing statute, is alleged in the petition for a cause of action.

Issue was joined through the filing of a joint answer by the persons designated as defendants. A trial was then had, and there was judgment rejecting the demands of plaintiff and ordering the release of the truck from seizure and impoundment. This appeal resulted.

Most of the issues have passed from the case since trial. The only question remaining is whether or not the provisions of Section 7 (f) of the above mentioned statute have been violated. The referred to section reads:

"It shall be unlawful for any distributor or any retail dealer to receive or transport by automobile or truck and have delivered into the storage tanks or equipment of the said distributor or retail dealer any gasoline or other motor fuel between the hours of 9:00 o'clock p. m. and 5:00 a. m., and the receipt of any gasoline or other motor fuel by automobile or truck by the said distributor or retail dealer during the said hours shall be a violation of the provisions of this Act by said distributor, retail dealer and the person, firm or corporation owning and having so delivered said gasoline or other motor fuel, and their agents, servants or employees engaged in making said unlawful delivery, and the automobile or truck so delivering any gasoline or other

motor fuel during the said hours, shall be subject to seizure by the Supervisor and forfeiture and sale in the manner provided for in this Act."

It is the contention of the State of Louisiana that the forfeiture of the truck is directed under the quoted provisions for the asserted reason that it had delivered gasoline to a retail dealer between the prohibited hours of 9 P. M. and 5 A. M. o'clock.

The record discloses that the truck in question belonged to the Evansville Oil Corporation, possessed a gasoline capacity of 968 gallons and was divided into five compartments, and was used in hauling the mentioned fuel from the owner's manufacturing plant located in Webster Parish, Louisiana. It was operated by and in the charge of L. D. Sneed, who sold the product on a commission basis. In Sneed's employ as a helper and driver was one J. C. Broome.

At approximately 5 o'clock on the afternoon of July 9, 1937, Broome drove the truck to the oil company's plant where it was loaded to capacity. The gasoline tax was properly accounted for and the required invoice given to the driver. The truck then left for Shreveport, its destination, and was boarded by Sneed as it passed through Minden, Louisiana. About an hour later the parties with their cargo arrived at the service or filling station of C. H. Simmons located at the corner of Texas and Christian streets in the city of Shreveport. They placed the truck on the side of the station and commenced the transfer of the fuel from compartment No. 2 into Simmons' storage tanks, which were two in number and possessed a total capacity of 1,100 gallons. A hose was used for the operation. After the transferring of 201 gallons, this being the contents of the referred to compartment and was sufficient to fill the storage tanks, Simmons was given an invoice for that quantity and Sneed and Broome departed for their homes, approximately three miles away. It was then shortly after 6:30 p. m. o'clock. The truck, containing the remaining gasoline, was left in its original position, and neither it nor the tanks were locked.

Thereafter Simmons, accompanied by his wife, attended a picture show, and on his return was informed by an employee that the storage tanks were about empty. Thereupon, and at about 12:05 o'clock on the morning of July 10, 1938, he obtained a 5-gallon can and a large funnel and began removing the gasoline from the fifth or back compartment of the truck and the placing of it into his storage tanks. Before the transfer of the second canful was completed, Simmons was arrested by the assistant collector of revenue who had been observing the truck for several hours from a distance of 45 or 50 yards. The truck was then impounded and placed in storage. It had not been previously moved since the time of its arrival at the station.

It is the positive testimony of Sneed, Broome and Simmons that the latter not only had no permission to remove the gasoline from the parked vehicle during the prohibited period of from 9 P. M. to 5 A. M. o'clock, but also that he was specifically instructed not to do so. On the other hand counsel for the State earnestly argue that the granting of such permission must be implied because of the actions of the truck owner through its agent, Sneed, in leaving the vehicle and tanks unlocked at the filling station. This argument, in our opinion, is untenable in view of the satisfactory explanation for the referred to actions which the record furnishes. Simmons was a regular customer of the oil company, and the latter had no particular place for the storage of its truck. Large quantities of gasoline were sold by the filling station operator each Saturday, and it was not unusual that the vehicle be left at his place of business so that his storage tanks could be replenished the following morning at his usual arrival time of approximately 5 o'clock. Simmons was authorized to remove gasoline after that hour, and when Sneed came for the truck around 7 o'clock, he furnished an invoice for the quantity taken and received a check therefor. A station attendant was on duty the entire night, and the vehicle was under his observation. It is therefore our conclusion that Simmons had no permission and was unauthorized to make the withdrawal which caused the impoundment.

The word "delivery", as used in the above quoted statutory provision, contemplates, we think, the voluntary transfer of the gasoline by the owner. Webster's International Dictionary defines the word "deliver" as "to give or transfer; to yield possession or control of; to part with, to make or hand over; to make delivery of; to commit; to surrender; to resign". It appears to us that there could be no delivery of gasoline, within the meaning and intendment of the statute, unless the owner

or its authorized agent expressly or impliedly consents to a transfer thereof. As neither the Oil Corporation, Sneed nor Broome consented to the taking of gasoline by Simmons, we are of the opinion that there was no delivery to him, and, consequently, no violation of the pertinent section of the gasoline taxing statute so as to justify a forfeiture of the truck.

"Forfeitures are not favored, and, to be incurred, must be strictly within the letter and spirit of the law." United States v. Mattio, 9 Cir., 17 F.2d 879; State v. Washington, La.App., 172 So. 195, 197.

The judgment of the trial court appears to be correct, and, accordingly, it is affirmed.